Stephen Ransom, Inc., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 7904, 7905. Promulgated November 15, 1927.

*J. S. Y. Ivins, Esq., Frank R. Serles, Esq.,* and *Charles H. Lawson, Esq.,* for the petitioner.

*John D. Foley, Esq.,* for the respondent.

**OPINION.**

PHILLIPS: These proceedings present only questions of fact for decision which probably never would have arisen except for the destruction of all petitioner's accounts for years prior to 1920, by a fire which occurred early in that year. It is not disputed that the petitioner is entitled to amortize the assets purchased for war work, nor is there any dispute as to the period over which the cost of such facilities should be amortized. The sole question in dispute is the amount which should be allowed. The petitioner is handicapped in its proof of cost by the loss of its books. While the exact amount of the cost can not now be determined, we are satisfied from ·the evidence that such cost was not less than $100,000. These machines and tools were purchased at a time when their cost was very high.

The testimony is that after the war the market was glutted with such machines and that they could be sold, if at all, only for a small fraction of their original cost. Some were sold on that basis, some were taken down and stored in the hope of a future market, and others were set up in the shipyard which petitioner established in Brooklyn, where they were used to some small extent. The greater portion of these machines, however, were either scrapped or stored in unoccupied space because there was no market for them. In the business which petitioner had carried on before the war and which it carried on after the war contracts were completed, such machines were of no use. In that business only the usual hand tools of a plumber and a few light machines were required. Such assets as these have been largely disregarded in determining the amortization allowance.

In April, 1920, the petitioner leased waterfront property in Brooklyn for a period of 10 years, upon which it erected bulkheads, piers and buildings and caused dredging to be done, all at a cost of $481,784.17. The Commissioner allowed no exhaustion or depreciation of such assets. They are of such a character that they revert to the owner of the premises on the expiration of the lease and exhaustion should be allowed, the amount to be prorated from July 1, 1920, over the life of the lease.

The petitioner purchased a floating dry dock at a cost of $532,500. It is argued that this should also be depreciated over the life of the lease. We can not follow this contention of petitioner for there is nothing which would indicate that the useful life of such property, which did not become part of the realty and could be moved from one location to another, bears any relationship to the term of the lease. Nor can we follow the suggestion of its counsel that we use a rate of depreciation taken from a text book on accounting. On the other hand the Commissioner is obviously in error in having failed to allow any depreciation or exhaustion. The principal issue between the parties was with respect to cost. In computing the deficiency the Commissioner was without any evidence of cost. This has now been established and in recomputing the deficiency for 1920 it is proper that the Commissioner allow a deduction for depreciation from August 1, 1920, based upon this cost and upon what he may determine from any sources available to him to be the normal useful life of a floating dry dock.

Petitioner also contends for depreciation upon an alleged expenditure of $394,250.67 for electrical work. We are left without any knowledge as to the character of the work done or assets acquired. Whether they became part of the realty or part of the dry dock,

whether they will have any value beyond the life of the lease or the life of the dry dock we do not know. Moreover, it does not appear when this work was done or the assets installed. The payment was made on the last day of the year. In such circumstances there is no basis on which an allowance for depreciation may be predicated.

The rental in 1920 of the New York and Brooklyn property, together with miscellaneous rental fees for the use of city docks, was $106,597.50. The Commissioner allowed $7,786.66. The full amount paid is an allowable deduction from gross income.

Upon organization, the petitioner took over the assets of a predecessor corporation and issued $50,000 par value of its capital stock therefor. In computing invested capital the Commissioner allowed only $5,000, for assets so acquired. The statute directs that such assets be included in the invested capital at their actual cash value, not to exceed the value at which they could have been included in the assets of the predecessor. (Sections 326 and 331, Revenue Act of 1918). The petitioner introduced as evidence only its minute book, showing that the directors authorized the purchase and containing a balance sheet of the assets and liabilities of the predecessor, which balance sheet indicates assets over liabilities of some $56,000. Such records standing alone are not proof of the actual cash value of the assets acquired or their cost to the predecessor corporation and the action of the Commissioner must be sustained because presumptively correct.

Petitioner alleges that the Commissioner erred in reducing invested capital for the periods involved by taxes for a prior period, which are in excess of the amount shown by the petitioner's return to be due, the additional amount not yet having been finally determined by the Commissioner. The situation here is somewhat similar to that presented in the *Appeal of Hof Brau Co.*, 6 B. T. A. 442. In the instant proceeding it was quite possible to establish the correct tax liability for the preceding period, that the proper invested capital might be computed. The burden is on the petitioner to do so. In fact, petitioner has established that the tax proposed by the Commissioner for the preceding period is excessive, in that inadequate allowance was made for amortization in computing net income for such preceding period. The tax for such prior period should be recomputed in the light of the facts found in this proceeding, and the amount so determined will be used in the computation of invested capital for the periods here involved.

*Decision will be entered on 20 days' notice, under Rule 50.*

Considered by VAN FOSSAN.