Wayside Furniture Company, Inc. v. Commissioner.
Wayside Furniture Co. v. Commissioner
Docket No. 4671-64.
United States Tax Court
T.C. Memo 1967-59; 1967 Tax Ct. Memo LEXIS 200; 26 T.C.M. (CCH) 316; T.C.M. (RIA) 67059; March 29, 1967
*200 Held, petitioner must depreciate a building which it constructed on leased premises over the estimated useful life of the building rather than amortize its cost over the original term of a lease between petitioner's two principal stockholders and the parents of one of them. James W. Pyles, 213 Main St., P.O. Box 87, New Martinsville, W. Va., for the petitioner. John H. Menzel, for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion
*201 DRENNEN, Judge: Respondent determined deficiencies in petitioner's income tax for the year 1961 in the amount of $602.47 and for the year 1962 in the amount of $393.97. Petitioner has abandoned its objection to a minor adjustment, so that the only issue for decision is whether petitioner properly amortized the cost of a building constructed on leased property over the term of the lease or must depreciate the building over its remaining useful life determined without regard to the term of the lease. Findings of Fact The stipulated facts are found as stipulated. Petitioner is a corporation organized in January 1959 under the law of West Virginia. Petitioner filed its income tax returns for the calendar years 1961 and 1962 with the district director of internal revenue, Parkersburg, W. Va. Petitioner was authorized to issue 5,000 shares of common stock with a par vaiue of $10. At all times material to this decision, the issued and outstanding stock of petitioner has been held as follows: Number
Shareholder
of shares
Leo M. Herrick
249
Doris Herrick (wife of Leo)
1
Gilford Frazee
249
Oris Frazee (wife of Gilford)
1
Petitioner is engaged in the retail *202 furniture business in New Martinsville, W. Va., which business was formerly conducted by Leo Herrick and Gilford Frazee as a partnership. The land on which petitioner's business is located was leased on August 31, 1956, for a term of 10 years from October 1, 1956, to October 2, 1966, by Leo Herrick (referred to hereafter as Herrick) and Gilford Frazee (referred to hereafter as Frazee) from Herrick's parents. Frazee and his wife are not related to Herrick or his wife or his parents. The lease between Herrick and Frazee and Herrick's parents (sometimes referred to hereinafter as the 1956 lease) is quoted below in its entirety: LEASE THIS AGREEMENT, made in dupliplicate this 31st day of August, 1956, by and between Leo Herrick and Mary Herrick, his wife, hereinafter called landlord and Leo M. Herrick and Gilford Frazee, hereinafter called tenant. (1) The landlord hereby rents to the tenant, and the tenant hereby hires and rents from the landlord, the following described property, to wit: Lots numbered one and two in Clark's Fourth Addition to New Martinsville, West Virginia, as the same are laid down and designated on the plat of said addition which is of record in the Office *203 of the Clerk of the County Court of Wetzel County, West Virginia, for the term of Ten (10) years, commencing on October 1, 1956 and ending October 2, 1966. (2) The tenant convenants and agrees to pay to the landlord the rent of Ten ($10.00) dollars per month for the first twelve months of this lease, thereafter the rent shall be fixed by the landlord, but it shall in no event exceed twenty five ($25.00) per month. The rent shall become due and payable on the first day of every month, in advance. (3) The landlord shall not be liable to tenant or any other person for any loss or damage suffered during this lease on account of defective conditions of the leased premises or any building structure or equipment upon the premises and the tenants assume all risk to persons or property due to latent or patent defects in the premises and fixtures thereon. (4) Tenant shall pay all utility services, including gas, water, sewer, telephone, electricity and such other special assessments that may be rendered at or furnished to the premises hereby leased. (5) Landlord agrees to pay all real estate taxes. (6) Landlord, in person or by agent, during the term of this lease and its extension, *204 if any, shall be admitted at reasonable hours to inspect the premises, and if necessary, to make any alterations or repairs to any part of the building. (7) It is expressly agreed that if any monthly installment of rent as herein called for remains overdue and unpaid for fifteen (15) days after receiving written notice from the landlord, the landlord at his option, may at any time thereafter, declare this lease terminated and cancelled and take possession of said premises. /s/ Leo Herrick /s/ Mary Herrick /s/ Leo M. Herrick /s/ Gilford Frazee The building in which petitioner conducts its business was constructed by Herrick and Frazee. The original portion of the building was completed on October 1, 1956, at a cost of $8,516.51, and an addition was completed on October 1, 1958, at a cost of $9,352.49. Until petitioner was organized, Herrick and Frazee utilized the original building and the addition in operating a retail furniture business as a partnership. When petitioner was organized in January 1959, Herrick and Frazee transferred to petitioner all of the assets, and petitioner assumed the liabilities, of the business formerly conducted by the partnership. The 1956 lease *205 was not expressly assigned to petitioner. Petitioner has made rental payments directly to the lessors, Herrick's parents. On its 1961 income tax return petitioner claimed deductions in the amount of $456.41 for county property taxes and $1,170.62 for repairs. On its 1962 income tax return petitioner claimed deductions in the amount of $425.59 for county property taxes and $1,400.66 for repairs. These deductions are not in dispute. Petitioner owns no real estate and no buildings other than the building in which it conducts its business. The parties have stipulated that the adjusted basis of petitioner's building as of December 31, 1960, was $11,619.11. In preparing its tax returns for 1961 and 1962, petitioner deducted depreciation computed by amortizing the adjusted basis of $11,619.11 over the remaining years of the term of the 1956 lease. In the notice of deficiency for 1961 and 1962 respondent determined that petitioner was entitled to a deduction for depreciation with respect to the building computed by depreciating the adjusted basis of the building over the estimated remaining useful life of the building (determined without regard to the remaining term of the lease), which *206 the parties stipulated to have been 189 months as of December 31, 1960. Opinion The only issue is whether petitioner is entitled to a deduction for depreciation of its building constructed on leased premises computed by amortizing the cost of the building over the original 10-year term of the lease or over the estimated useful life of the building. The parties have stipulated petitioner's basis in the building as of December 31, 1960, and the remaining useful life of the building. The general rule is that where a lessee constructs improvements on leased property, begun prior to July 28, 1958, [1] which have estimated useful lives longer than the original term of the lease the lessee is entitled to depreciate or amortize the cost of the improvements over the remaining term of the lease, unless the facts show with reasonable certainty that the lease will be renewed. Sec. 1.162-11(b) and sec. 1.167(a)(4), Income Tax Regs. Where the tenancy of the lessee is for an indefinite period, or at will, depreciation of the cost of the improvements by the lessee is recoverable only over the estimated useful life of the property. Standard Tube Co., 6 T.C. 950. *207 Whether the lease is for an indefinite term or there is a reasonable certainty that it will be renewed beyond its original term is a question of fact to be determined in each case. Although the issue involved is primarily a question of fact the Court is severely handicapped by an almost complete lack of evidence with respect to the factual matters involved. Neither Herrick nor Frazee testified, nor did either of the lessors, Herrick's parents. The only witness offered by either party was the manager of petitioner's business who had been associated with petitioner for less than a year at the time of the trial and was not qualified to testify with respect to any understanding which the lessors and the original lessees may have had concerning petitioner's occupancy of the leased premises. Petitioner's principal argument seems to be that the building will become the property of the lessors at the end of the original *208 term of the lease and consequently it is entitled to amortize the cost of the building over the term of the lease. The only evidence offered to support this argument is the 1956 lease between Herrick and Frazee and Herrick's parents, and the testimony of the manager that while he has been manager of the business petitioner has been paying the rent under that lease directly to the lessors. The first difficulty with this argument is that even if title to the building shifts to the lessors upon termination of the lease petitioner would not necessarily be entitled to depreciate the building over the original term of the lease if it is reasonably certain that the lessee will continue to have the use of the premises after the original term of the lease expires. Peter Theodore, 38 T.C. 1011; Andrew Morris, 38 T.C. 279. The second difficulty is that it cannot be determined with any degree of certainty that title to the building will pass to the lessors at the end of the original term of the lease. The lease says nothing at all about ownership of any improvements placed on the property by the lessees, although the lease appears to contemplate that improvements would *209 be placed on the property by the lessees. Nor has petitioner established that under West Virginia law title to the improvements would necessarily vest in the lessors on termination of the lease. In Milburn By-Products Coal Co. v. Eagle Land Co., 141 W. Va. 866, 93 S.E. 2d 231, the West Virginia Supreme Court held that buildings erected by the lessee-coal mining company for the use of its employees were trade fixtures and that money paid for the buildings by the turnpike authority in lieu of a condemnation award properly belonged to the lessee and not the lessor. The court noted that it had not previously passed on the question of buildings constructed by a lessee and characterized its decisions dealing with other types of improvements in the following language: These decisions of this Court emphasize the intention of the lessee in attaching property to the real estate of the lessor, that is as to whether it was for the purpose of increasing the value of the land, or whether the attachment was for the sole benefit of the lessee in conducting his trade or business. In each case then it becomes a question of fact whether fixtures placed upon the land of a lessor by a lessee *210 are permanent or removable. * * * There is no evidence in this record as to the type of construction of the building involved, whether it was movable or immovable, what it could be used for, or whether there was any agreement or understanding between the lessors and lessees concerning removal of the building on termination of the lease. This Court has held that where improvements did not become the property of the lessors and could be removed at the expiration of the lease, the cost of the improvements is depreciable over their estimated useful lives. Stephen Ransom, Inc., 9 B.T.A. 120; cf. Kerr-Cochran, Inc., 30 T.C. 69, 78-79. We cannot determine on this record whether title to the building will pass to the lessors at the end of the original term of the lease or not; nor have we been persuaded that any such passage of title would be accompanied by the cessation of petitioner's use of the building. Petitioner has failed to convince us that it is entitled to amortize the cost of the building over the original term of the lease on the theory alone that title to the building will pass to the lessors at the end of that time. Petitioner also claims that *211 it is occupying the property under the 1956 lease from Herrick's parents to Herrick and Frazee and that inasmuch as there is no provision for renewal in that lease, it is entitled to amortize the cost of the building over the term of that lease. To rely on this argument petitioner had the burden of proving that it was occupying the property under the above lease. While we think it is likely that the parties considered that petitioner was occupying the property under the authority granted to Herrick and Frazee in the 1956 lease, we cannot be at all certain that all the terms of that lease were considered to apply to petitioner's occupancy of the leased premises. So far as we know there was no formal assignment of the lease from Herrick and Frazee to petitioner. Petitioner's manager did testify that during the 1 year he had been employed by petitioner, petitioner had paid the rent called for in the 1956 lease directly to the lessors. But, on the other hand, on petitioner's income tax returns for 1961 and 1962, petitioner claimed deductions for rent in the amounts of $899.03 and $1,728.98, respectively, both amounts being far in excess of the maximum rental provided for in the 1956 lease. *212 In addition, petitioner claimed deductions for county property taxes on its returns for 1961 and 1962 in the amounts of $456.41 and $425.59, respectively, while it is expressly provided in the 1956 lease that the landlord will pay all real estate taxes. That lease also provides that the landlord shall be admitted to the premises at reasonable hours to make any alterations or repairs to the building, if necessary; yet petitioner claimed deductions of $1,170.62 and $1,400.66 for repairs on its 1961 and 1962 returns, respectively. On the record before us we are not convinced that all the terms of the 1956 lease applied to petitioner's occupancy of the property and that petitioner's occupancy of the property was limited to the 10-year term prescribed in that lease. And finally, even if the 10-year term of the 1956 lease does apply to petitioner's occupancy of the property, we believe there is a reasonable certainty that the lease will be renewed from time to time as long as petitioner wants to conduct its business at that location. Without getting into the legal niceties of whether respondent had the burden of proving, in the absence of any provision for renewal in the lease, that there *213 was a reasonable certainty that the lease would be renewed, or whether petitioner had the burden of proving, in the light of the presumptive correctness of respondent's determination, that there was no reasonable certainty that the lease would be extended, see Westing-house Broadcasting Co., 36 T.C. 912, affd. 309 F. 2d 279, certiorari denied 372 U.S. 935; Hens & Kelly, Inc., 19 T.C. 305, we believe that what little evidence we do have before us justifies the conclusion that there was a reasonable certainty that the lease would be extended. The lessors are the parents of one of the 50-percent stockholders of petitioner. Petitioner erected the improvements on the property at a cost of about $18,000, which would appear to be far in excess of the value of the land based on the rental provided in the lease. It is unlikely that either the lessors or the lessees would have been willing to have a building designed for use as a furniture store erected on the property unless it was understood that it would continue to be used for that purpose for more than 10 years. Petitioner has no other property that it could use as its place of business *214 and there was no evidence that petitioner had made any extensive efforts to find another location for its business, even though the term of the 1956 lease expired within 5 months after the date of the trial in this case. There is nothing to indicate that the lessors were desirous of recovering possession of the property - apparently petitioner was paying the taxes on the property, keeping it in repair, and possibly paying more rent than called for in the lease, so it was probably to the lessors' advantage to extend the lease. The only evidence of uncertainty that petitioner's occupancy of the premises would be extended was the fact that the 1956 lease itself contained no provision for renewal, although paragraph 6 thereof does contain the terminology, "during the term of this lease and its extension." However, petitioner did not choose to present any of the parties to the lease for questioning with respect to the possibility or probability that the term would be extended so we have had to use our best judgment based on the evidence that was presented. For the above and other reasons we believe petitioner was occupying the premises in 1961 and 1962 for a period of indefinite duration. *215 This Court and other courts have held that where there is a reasonable certainty that the lessee will continue to occupy the leased premises for an indefinite period beyond the stated term of the lease, the lessee must depreciate the cost of improvements over their estimated useful lives, determined without regard to the term of the lease. G.W. Van Keppel Company v. Commissioner, 295 F. 2d 767; Highland Hills Swimming Club, Inc. v. Wiseman, 272 F. 2d 176; Peter Theodore, supra; Andrew Morris, supra; Kerr-Cochran, Inc., supra; Standard Tube Co., supra.We so conclude here. Decision will be entered for the respondent. Footnotes
1. Respondent does not rely on sec. 178, I.R.C. 1954↩, enacted by sec. 15, Technical Amendments Act of 1958, 72 Stat. 1606. There is no evidence in the record to indicate whether the 1958 addition to the building was started prior to July 28, 1958.