G. W. VAN KEPPEL COMPANY, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 16748.

United States Court of Appeals Eighth Circuit.

Nov. 7, 1961.

Rehearing Denied Nov. 30, 1961.

Donal D. Guffey, Kansas City, Mo., for petitioner. Albert F. Hillix, Richard H. Brown and Hillix, Hall, Hasburgh, Brown & Hoffhaus, Kansas City, Mo., on the brief.

Fred E. Youngman, Atty., Dept. of Justice, Washington, D. C., for respondent. Louis F. Oberdorfer, Asst. Atty. Gen., and Meyer Rothwacks, Atty., Dept. of Justice, Washington, D. C., on the brief.

Before VOGEL, VAN OOSTERHOUT and BLACKMUN, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This proceeding comes before this court upon a timely petition by taxpayer, The G. W. Van Keppel Company, for review of the decision of the Tax Court entered October 24, 1960 (T. C. Memo 1960–224 not officially reported) determining deficiencies in income tax for the fiscal years ending November 30, 1955, and November 30, 1956. Jurisdiction is established.

The question presented is whether the Tax Court erred in holding that the cost of improvements erected by the taxpayer on leased property should be depreciated over the useful life of such improvements as determined by the Commissioner, rather than over the remaining period of the lease as contended by the taxpayer. If the Tax Court was warranted in determining under the factual situation here presented that the lease, which in form was a ten year lease, was in substance a lease for an indefinite period, the decision of the Tax Court must be affirmed.

The facts are largely stipulated. There appears to be no dispute as to the basic facts. The controversy arises largely with relation to inferences to be drawn from the facts.

During the years here in question there was in existence a written lease of the busines premises occupied by the tax-

payer, wherein Elizabeth E. Van Keppel was lessor and the taxpayer, lessee. The lease is dated September 28, 1950, and runs for a term of ten years from October 1, 1950. The lessee agreed to pay as rent the sum of $250 per month, to pay all taxes and assessments, to insure buildings and pay insurance premiums, to pay for all repairs, and to return the property at the termination of the lease in good condition. The lease contains no renewal option and makes no provision for the extension of the lease beyond the ten-year period.

Taxpayer is a Missouri corporation, incorporated December 29, 1945. It sells and services heavy construction equipment in Kansas City, Missouri. It took over the business formerly conducted by G. W. Van Keppel as sole proprietor. The lessor, Mrs. Van Keppel, is the wife of G. W. Van Keppel. The taxpayer corporation issued 1500 shares of stock in 1945, of which Mr. Van Keppel received 1124 shares, Mrs. Van Keppel, 375 shares, and R. L. Mitchell, who served as vice president, 1 share.

Mr. Van Keppel has at all times served as president, treasurer and director of the company and was at all times the person in control of taxpayer's affairs. Mrs. Van Keppel served as one of three directors until 1951, and continued to own the 375 shares of stock issued to her until November 29, 1956, when all of her stock was cancelled. As a result of the cancellation of Mrs. Van Keppel's stock, the outstanding stock of the corporation was reduced to 1125 shares. The record contains no information as to what, if anything, Mrs. Van Keppel received for the surrender of her stock, and nothing appears relating to the circumstances leading up to her retirement as a director.

Taxpayer operated its business on the real estate leased from Mrs. Van Keppel, the first lease being for a ten-year period, executed in 1945, and surrendered in connection with the execution of the present ten-year lease here in controversy. The real estate included in the lease was acquired at various times, commencing in 1938. Title to the first tracts of real estate was taken in the name of Mr. and Mrs. Van Keppel. In 1945 Mr. Van Keppel transferred his interest in the land to his wife. Title to additional contiguous real estate covered by the lease was subsequently acquired in the name of Mrs. Van Keppel. The source of the funds for the acquisition of the real estate and the consideration, if any, for the transfer of Mr. Van Keppel's interest in part of the real estate to his wife, is not shown.

Taxpayer's board of directors, then consisting of Mr. and Mrs. Van Keppel and K. W. Cramp, at a meeting on August 18, 1950, authorized the execution of the ten-year lease here in controversy, and above described, and also authorized Mr. Van Keppel to construct a building of suitable size and design on the leased premises for a cost not to exceed $100,000. Such building was erected at a cost of $98,180, and between 1952 and 1956 other permanent improvements were made on the leased property costing $26,515. The depreciation and amortization issues arise in connection with such improvements. The cost and estimated life of the improvements made by taxpayer are stipulated and not in dispute. The useful life of the principal building was 37 years as of December 1, 1955.

At the end of the last taxable year here in controversy, Mr. Van Keppel owned 774 shares of the 1,125 shares of stock of the taxpayer outstanding, and he served as president, treasurer and director of the taxpayer.

Taxpayer challenges the Tax Court's determination that the cost of the improvements erected by the taxpayer upon the leased property can be recovered only through annual deductions for depreciation over the estimated useful life of the property.

The allowance of deductions from gross income is a matter of legislative grace, and statutory authority for such deductions must be found. The allowance of deductions from gross income is not governed by general, equitable considerations. Deputy v. Du Pont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416;

Northern Natural Gas Co. v. O'Malley, 8 Cir., 277 F.2d 128, 131.

■ The statute governing the allowance of the deduction here involved is § 167(a) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 167(a), which with § 161 provides so far as material here that in computing net income for income tax purposes there shall be allowed as a deduction from gross income, among others, a reasonable allowance for exhaustion, wear and tear (depreciation) of property used in a trade or business of the taxpayer or property held by the taxpayer for the production of income. The purpose of the depreciation allowance is to afford the owner of a wasting asset used in any trade or business or held for production of income, a means of recouping, tax free, his investment in that property; and under the classic or straight line method, which is applicable here, the amount which may be deducted is an amount which should be set aside each year in order that, at the end of the useful life of the property, the total of the sums thus set aside plus any salvage value will equal the original cost. United States v. Ludey, 274 U.S. 295, 300–301, 47 S.Ct. 608, 71 L.Ed. 1054.

Section 162 relating to deductions for business expense and Section 167 relating to depreciation, now a part of the Internal Revenue Code of 1954, appeared in substantially the same form in Section 23 of the Internal Revenue Code of 1939. Regulations have been promulgated relating to such sections, including Regulations 118, § 39.23(a)-10(b) and Regulations 1.167(a)-4 and 1.162-11(b) (1) under the 1954 Code.

The taxpayer in his brief correctly draws the following conclusion from the statutes and the interpretative regulations:

"It would appear to be clear from a reading of the above noted regulations that the cost borne by a lessee in erecting buildings or making permanent improvements on grounds of which he is lessee, is to be treated as a 'capital investment' and is not 'deductible as a business expense.' It would further appear to be clear that a taxpayer is entitled to recover such a capital investment. The only question then is the period of time over which such recovery may be had. Is the return of capital to be effected over the remaining term of the lease or effected over the estimated useful life of the improvements?"

The Tax Court in its original opinion set out Regulation 118, § 39.23(a)-10(b). Upon motion for reconsideration by the Government, the Tax Court deleted reference to such regulation and in its place cited and quoted Regulation 1.162-11(b) (1). Each of the regulations just cited among other things, sets out factors to be considered on depreciation allowable in situations where a fixed-term lease contains an option for renewal or where it otherwise appears with reasonable certainty that the lease will be renewed. Taxpayer appears to believe that we have a renewal situation here presented. Such is not the case. It is clear that the lease contains no renewal option. We are satisfied that the Tax Court reached a permissible conclusion in determining that in substance the lease before us is one for an indefinite period—not one for a fixed period. In such a situation, the portion of the various regulations dealing with renewal provisions of leases has no direct application, and it is quite unnecessary to consider taxpayer's contention that Regulation 1.162-11(b) (1) cannot be applied retroactively, nor is it necessary to determine whether there is actually any inconsistency in the various regulations with reference to the rules to be applied in situations pertaining to renewal of fixed-term leases.

As a basis for its decision, the Tax Court states:

"It has been held under this regulation that when the facts show that there is a reasonable certainty that the tenant will continue in occupancy beyond the stated period of the lease, the lessee is a tenant for an indefinite duration and the improve-

ments should be depreciated over their estimated useful life. Standard Tube Co., 6 T.C. 950 (1946); Kerr-Cochran, Inc., 30 T.C. 69 (1958); Highland Hills Swimming Club, Inc., v. Wiseman, 272 F.2d 176 (C.A. 10, 1959).

"We find that this exception is applicable here. There are many factors tending to show a reasonable certainty that the petitioner will remain upon the premises beyond the termination of the lease."

■ The court decisions fully support the legal proposition that in instances where the lease is of indefinite duration, the improvements must be depreciated over the period of their useful life. Highland Hills Swimming Club, Inc., v. Wiseman, 10 Cir., 272 F.2d 176; George H. Bowman Co. v. Commissioner, 59 App.D. C. 13, 32 F.2d 404; Kerr-Cochran, Inc., 30 T.C. 69; The Standard Tube Co., 6 T.C. 950; Elmira Arms Co., 7 B.T.A. 703; William Greilich & Sons, Inc., 3 B.T.A. 1333; William Scholes & Sons, Inc., 3 B.T.A. 598; Thatcher Medicine Co., 3 B. T.A. 154; Sentinel Publishing Co., 2 B. T.A. 1211; Walle & Co., Ltd., 1 B.T.A. 1064.

The Highland Hills Swimming Club case, supra, is in substance indistinguishable from our present case. The court there stated:

"The sole issue in this case is whether for tax purposes the swimming pool here involved is to be amortized over the stated period of the taxpayer's lease or must be depreciated over its useful life. Which of these two alternatives is correct depends on whether the stated periods of the leases, one from the individuals to the club and the other from the club to the taxpayer, are to be recognized as controlling for tax purposes.

"The law in this area is clear and no dispute on the legal principles is apparent between the parties. If the stated period of the lease is not recognized and the lease is found to be

of indefinite duration the improvement must be depreciated over its useful life." 272 F.2d 179.

We consider the Highland Hills Swimming Club case in its entirety to be a well-reasoned opinion and believe that it properly states the law applicable to our present case.

■ The court in the cited case, as the Tax Court here, looked to the substance of the transaction rather than the form, and determined the lease to be of indefinite duration. The court, citing supporting authorities, correctly stated that the question of whether the leases are in substance of definite or indefinite duration is a question of fact and that courts are to consider all the circumstances that throw light upon the fact issue.

■ The responsibility for determining fact issues, including inferences to be drawn from undisputed facts, rests with the trial court, here the Tax Court. Fact determinations are to be set aside only if they are clearly erroneous. Commissioner v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218; Miller v. Commissioner, 8 Cir., 295 F.2d 538 (decided October 26, 1961); Crown Iron Works v. Commissioner, 8 Cir., 245 F.2d 357, 360.

■ Upon the basis of the evidence before us, some of which has heretofore been set out, substantial evidentiary support appears for the following findings made by the Tax Court:

" '[T]he present use of the property constituted the highest and best use thereof' and that due to the nature of the improvements they have 'limited functional utility for any other tenant with the exception of the present tenant.'

\*        \*        \*        \*        \*        \*

"[W]e find no separate interests but rather an identity of purposes and intent between the lessor and lessee.

\*        \*        \*        \*        \*        \*

"No problem arises at the termination of the lease period as the re-

lationship of the parties practically guarantees the petitioner a continued occupancy as long as it is advantageous from a business point of view.

\* \* \* \* \* \*

"The arrangement of a lease with no renewal clause and a rent that appears reasonable under the cirstances presents an attractive device from a tax standpoint when the lessor and lessee are closely related persons as in this situation. However, when all the surrounding circumstances which shed light upon the true nature of the transaction are viewed, it can be seen that in substance the transaction was so arranged in order to obtain a tax advantage and is not to be construed as an arm's-length contract."

\* \* \* \* \* \*

"The petitioner having intended *ab initio* to occupy the premises for a continuous duration beyond the stated period of the lease, the improvements should have been depreciated over their estimated useful life."

We find nothing in the record to indicate that Mrs. Van Keppel had any funds of her own invested in the leased real estate. There is no showing that she paid anything for the 375 shares of taxpayer's stock she held for a time, nor is there any evidence that she received anything for the surrender and cancellation of the stock. The reason for her becoming a director and ceasing to be a director is not explained. There is no evidence that Mrs. Van Keppel at any time refused to comply with any request of the corporation or her husband in connection with the leasing or her stockholding arrangement. The leased real estate as improved is ideally suited for taxpayer's business. It is hardly credible that Mr. Van Keppel as originator of the business, principal officer, and controlling stockholder, would have placed the real estate title in his wife's name and would have made the substantial improvements upon the leasehold unless he felt certain that the lease would continue for an indefinite period, regardless of its form. The entire course of dealing between the parties here lends substantial support to an inference that the lease transaction was one of form only. We cannot say that the findings of the Tax Court are clearly erroneous.

The findings of the Tax Court support its conclusion that the lease was in substance one of indefinite duration. Hence, the court committed no error in determining the deficiencies upon the basis that the depreciation allowance upon the buildings must be spread over their useful life.

The decision of the Tax Court is affirmed.