Radio City Trailer Park v. Commissioner.
Radio City Trailer Park v. Commissioner
Docket No. 93462.
United States Tax Court
T.C. Memo 1963-313; 1963 Tax Ct. Memo LEXIS 32; 22 T.C.M. (CCH) 1646; T.C.M. (RIA) 63313; November 26, 1963
*32 Petitioner made leasehold improvements on premises leased from its sole stockholders. At the time each of the improvements was completed, the remaining term of the lease was shorter than the useful life of the improvement. There was no renewal provision in the lease and the improvements were to become the property of the lessors at the termination of the lease. Held, petitioner must depreciate the cost of the improvements based on their useful life. There was a reasonable certainty that petitioner's lease would be renewed. Clarence I. Spencer, 715 Savings & Loan Bldg., Des Moines, Iowa, for the petitioner. Ivan L. Onnen, for the respondent. PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge: Respondent determined a deficiency in the income tax of petitioner corporation for its fiscal year ended June 30, 1959, in the amount of $1,228.64. The sole issue is whether the amount which petitioner is entitled to deduct as amortization or depreciation on improvements made by it on premises leased from its sole stockholders should be computed on the basis of the useful life of the improvements or the shorter remaining period of the lease. Findings of Fact Some of the facts have been stipulated. The stipulation of facts and all exhibits identified therein are incorporated *34 herein by reference. Radio City Trailer Park, hereafter referred to as petitioner, is a corporation organized and existing under the laws of the State of Iowa with its principal place of business in Des Moines, Iowa. Petitioner keeps its books and files its income tax returns on a fiscal year basis and employs an accrual method of accounting. Its return for its fiscal year ended June 30, 1959, was filed with the district director of internal revenue, Des Moines, Iowa. John P. Pinkerton is a dentist living in Des Moines. He began his practice in 1933 and has practiced continuously since 1933 except for 4 years while he was serving in the armed forces. He was retired from the armed forces because of disability (osteoarthritis) in 1946. Pinkerton decided in 1948 to operate a mobile home trailer park. In order to limit his personal liability and avoid any possible involvement in the affairs of the trailer park which might impair his dental practice, he decided to operate the trailer park through the use of a corporation. To this end petitioner was organized on July 18, 1948. Pinkerton was president and his wife was secretary-treasurer. They have been the sole stockholders and officers *35 of petitioner since its incorporation. In July 1948, Pinkerton and his wife purchased a tract of land containing approximately four square blocks on East Fourteenth Street in Des Moines; and this tract was then leased by them to the petitioner (immediately after its incorporation) for a term of 15 years commencing August 1, 1948, at a monthly rental of $500. The lease provides in part: 12. That should said lessee hold over by permission of lessor for three days after expiration of this lease, it is agreed by all parties signing the same that it shall constitute a renewal hereof for the same term and upon the same conditions, except that the lessor at his election may terminate such renewed lease by giving three days' notice to quit. * * *
26. Lessee may with the consent of the lessor construct buildings and improve said premises for the operation of a trailer park and tourist cabins, but at the termination of this lease said buildings and improvements become the property of the lessors. Petitioner took possession of the leased premises on August 1, 1948, and since that time has operated thereon a mobile home trailer park. Expenditures made by petitioner in improving the *36 leased premises during each of its fiscal years through June 30, 1959, were in amounts as follows: Useful life of
Term of lease
improvements
remaining at time
Fiscal year
at time made
improvements made
ended June 30
Amount
Years
Years
1949
$41,707.25
15
Less than 15
1950
3,517.26
15
Less than 14
1951
2,712.22
15
Less than 13
1952
2,048.54
15
Less than 12
1953
2,370.52
15
Less than 11
1954
1,920.36
15
Less than 10
1955
2,057.78
15
Less than 9
1956
8,701.76
15
Less than 8
1957
3,530.98
15
Less than 7
1958
7,933.03
15
Less than 6
1959
11,063.00
15
Less than 5 All of the improvements made by petitioner during its fiscal years ended June 30, 1949, through June 30, 1958, were completed prior to July 28, 1958. All of the improvements made during its fiscal year ended June 30, 1959, were begun after July 28, 1958. The record is incomplete with respect to the nature of many of the improvements made. The record shows that the trailer park is divided into spaces for the parking of mobile homes. Each of these spaces is equipped to provide water, electricity, gas and sewerage facilities for the mobile home occupying *37 the space. Petitioner originally had 102 such spaces (presumably prepared for occupancy during petitioner's year ended June 30, 1949); at the time of trial the number had increased to 184. During the course of the years since 1948, many spaces had to be enlarged to accommodate the increasing length of the newer type mobile homes. Many of the improvements made after 1954 involved lengthening already improved spaces from 41 feet to 82 feet. Improvements were also made during petitioner's fiscal years ended June 30, 1960, and June 30, 1961, in the amounts of $7,533.51 and $9,492.52. These improvements had a useful life of 15 years at the time they were made. Pinkerton and his wife each owned 50 percent of the stock of petitioner, and the capital of petitioner on June 30, 1959, consisted of $10,000 stock and $30,452.82 earned surplus. The income of petitioner is derived principally from rents; $46,342.80 of the gross income of $48,660.14 reported by petitioner on its return for the year involved herein came from this source. Petitioner appears to have operated profitably during all years except the first two (petitioner's fiscal years ended June 30, 1949, and June 30, 1950). Petitioner *38 reported taxable income of $11,639.91 for its year ended June 30, 1959; $9,509.22 for its year ended June 30, 1958; and $9,681.16 for its year ended June 30, 1957. Pinkerton received a salary of $3,850 from petitioner during its year ended June 30, 1959. There is no evidence as to what amount, if any, petitioner paid to the Pinkertons as dividends since its incorporation. Petitioner on its income tax returns for each of its years ended June 30, 1949, through June 30, 1959, claimed a deduction for amortization of the cost of its leasehold improvements on the basis of the term of the lease remaining at the time the improvements were made. The respondent, in his notice of deficiency herein, disallowed this claimed deduction with the following explanation: It is determined that the item listed on your return under Schedule I. - Amortization as "Leasehold Improvements" costing $87,562.70, with respect to which you claimed an amortization deduction in the amount of $8,574.32, has not been established as constituting an amortizable asset. In lieu thereof, the item its determined to be a depreciable asset, on which depreciation allowable amounts to $4,961.84, * * *. Opinion The issue *39 to be decided is whether, where improvements were placed by petitioner on premises leased from its sole stockholders, which improvements had a useful life longer than the remaining term of the lease and were to revert to the lessors at the end of the lease, the deduction allowable for amortization or depreciation of said improvements should be based on the useful life of the improvements or on the shorter remaining term of the lease. 1. Improvements made during petitioner's taxable year ended June 30, 1959. During this year petitioner made improvements costing $11,063 to the leased premises. All of the improvements were begun after July 28, 1958; and they had a useful life of 15 years. The remaining term of the lease at the time the improvements were made was less than 5 years. Petitioner concedes that as to these improvements it is limited to a deduction for depreciation of their cost based on the useful life of the improvements, and that respondent's action in so determining was correct. Section 178(b) of the Internal Revenue Code of 1954 as added by section 15 of the Technical Amendments Act of 1958, 72 Stat. 1606. 2. Improvements made during petitioner's *40 years ended June 30, 1949, through June 30, 1958. During these years petitioner made improvements in the amounts shown above in our Findings of Fact. All of these improvements were completed prior to July 28, 1958; and they all had a useful life of 15 years when made. The remaining term of the lease at the time the improvements were made varied from less than 15 years for those made during petitioner's year ended June 30, 1949, to less than 6 years for those made during petitioner's year ended June 30, 1958. Section 178 of the 1954 Code is not applicable to improvements completed prior to July 28, 1958 (section 15(c), Technical Amendments Act of 1958, 72 Stat. 1606) although section 178(c) is largely a codification of the law existing at the time section 178 was enacted. See H. Rept. 775, 85th Cong., 1st Sess., p. 12. We agree with respondent that the rule to be applied here is that, as to improvements completed prior to July 28, 1958, by a lessee on leased premises, the cost of such improvements may be amortized over the shorter remaining term of the lease, unless there existed, as of the end of the year in which the improvements were completed, a reasonable certainty that the *41 lease would be renewed; if such reasonable certainty existed, a deduction for depreciation for the cost of the improvements is allowable based on the longer useful life of the improvements. Sec. 1.162-11(b), Income Tax Regs.; sec. 1.167(a)-4, Income Tax Regs.; Rev. Rul. 57-361, 1957-2 C.B. 150; G. W. Van Keppel Company v. Commissioner, (C.A. 8) 295 F. 2d 767, affirming a Memorandum Opinion of this Court; Standard Tube Co., 6 T.C. 950. The determination as to whether such reasonable certainty existed is to be made in the light of all the facts in the particular case. G. W. Van Keppel Company v. Commissioner, s0pra. After an examination of the record we believe that during petitioner's year ended June 30, 1959, Pinkerton did not contemplate a change in the operation of the trailer park by petitioner for the following reasons: a. There is no evidence that Pinkerton wanted to cease the operation of the trailer park either by liquidation or sale of petitioner or by sale of the leased premises and the improvements thereon. Pinkerton testified. I don't expect a stranger to own it, as long *42 as I am alive I am going to own it. It is my livelihood when I can't practice medicine. b. In forming petitioner to operate the trailer park Pinkerton desired to limit his personal liability and to avoid any possible involvement in the affairs of the trailer park (e.g., litigation) which might adversely affect his dental practice. These reasons for using the corporate form for the operation of the trailer park still existed during the taxable year involved. c. The operation of the trailer park by petitioner had proven financially successful. Pinkerton testified that petitioner had made a net profit in every year except the first two of its operation. In addition, petitioner had an earned surplus of $30,452.82 as of June 30, 1959. d. Despite the fact that petitioner's lease with the Pinkertons contained no option to renew the lease [1] we think the relation of the parties to the lease, together with the substantial amount which petitioner continued to expend in improving the leased premises shortly before the term of the lease was to expire, all indicate that there was no intention on the part of Pinkerton to terminate the lease. *43 It is true that the mere fact that parties to a lease are related does not in itself establish reasonable certainty that the lease will be renewed. Fort Wharf Ice Co., 23 T.C. 202. However, in the instant case, Pinkerton desired to operate a trailer park, to do this through use of a corporation, and to make the necessary land available to such corporation through use of a lease rather than through transfer of title. Also he, acting as president of such corporation (while he and his wife were sole stockholders thereof) authorized improvements to be constructed, costing $18,996.03 and having a useful life of 15 years, when the lease had less than 6 years to run. All this tends to indicate that no change in the existing mode of operation was intended. Our belief in this regard is further confirmed by the fact that during the subsequent fiscal years ended June 30, 1960, and June 30, 1961, additional improvements costing $17,026.03 and having a useful life of 15 years were placed on the premises. It seems unlikely that such improvements would have been so made when the then remaining term of the lease was less than 4 years, unless it was intended that petitioner would continue *44 to use them. See G. W. Van Keppel Company v. Commissioner, supra. Based on our consideration and weighing of all the evidence, we find as a fact, and hold, that there was a reasonable certainty that petitioner's lease with the Pinkertons would be renewed. Accordingly, we approve the respondent's determination that the leasehold improvements here involved should be depreciated over the useful life thereof. Decision will be entered for the respondent. Footnotes
1. Paragraph 12 of the lease has been regarded by the parties as not constituting a renewal provision.↩