ROBERT M. HUNTER and LINDA M. HUNTER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hunter v. Commissioner
Docket Nos. 12185-83, 29654-83.
United States Tax Court
T.C. Memo 1985-271; 1985 Tax Ct. Memo LEXIS 362; 50 T.C.M. (CCH) 67; T.C.M. (RIA) 85271; June 5, 1985. E. J. Ball,Kenneth R. Mourton, and Stephen E. Adams, for the petitioners. Leroy D. Boyer, for the respondent. GOFFE MEMORANDUM OPINION GOFFE, Judge: The Commissioner determined deficiencies in petitioners' Federal income taxes as follows: Docket No.
Taxable Year
Deficiency
29654-83
1977
$4,859
29654-83
1978
18,407
12185-83
1979
4,262
12185-83
1980
47,775
12185-83
1981
8,920 After concessions by the parties, the issue for decision is whether petitioners, as noncorporate lessors, are entitled to the investment tax credit with respect to certain section 38 [1] machinery and equipment leased or subleased by them to their wholly owned corporation. All of the facts have been stipulated and this case was submitted to this Court without trial pursuant to Rule 122. The stipulation of facts and accompanying exhibits are so found *364 and incorporated herein by reference. Robert M. and Linda M. Hunter (Mr. or Mrs. Hunter, individually, or petitioners, collectively), husband and wife, were residents of Tulsa, Oklahoma, at the time the petition in this case was filed. For the taxable years at issue, petitioners timely filed joint Federal income tax returns with the Internal Revenue Service Center in Oklahoma City, Oklahoma. Mr. Hunter operated a machine shop as an individual proprietor under the name of American Manufacturing Company until May 31, 1978, on which date business was incorporated as American Manufacturing of Oklahoma, Inc. (the corporation). Petitioners are the sole shareholders of the corporation. Petitioners and the corporation are related parties within the meaning of section 178(b)(2). Mr. Hunter, individually, purchased land and improvements on March 14, 1978. The land, building, and such machine shop equipment as was deemed necessary or desirable by mutual consent of lessor and lessee, were leased by Mr. Hunter to the corporation for one year by oral agreement on or about June 1, 1978. A Lease Agreement, dated June 1, 1978, was prepared by the parties, but was never executed. *365 The term of the unexecuted lease was to expire upon May 31, 1994. During the taxable years 1979, 1980, and 1981, Mr. Hunter, individually, leased or purchased additional machine shop equipment in the amounts of $201,174, $561,502, and $64,100, respectively. All of the newly acquired equipment was leased or subleased by Mr. Hunter to the corporation. The useful life of the newly acquired property, all of which is section 38 property, leased or subleased by petitioners to the corporation, was seven years or more. A written lease agreement, dated June 1, 1979, provided for the lease or sublease of Mr. Hunter's land, building, and equipment to the corporation for one year. Payments under the lease were to be made over 12 months beginning June 1, 1979, and ending May 31, 1980, in the total amount of $256,000. The lease contained no provisions for renewal of the lease or options to renew. The lease required petitioners to provide "at least three support personnel" in addition to the leased building, land, and equipment. On or about May 15, 1980, the items listed in the written agreement dated June 1, 1979, and other equipment acquired by Mr. Hunter prior to May 15, 1980, were *366 leased by oral agreement from his to the corporation for one year for total lease payments in the amount of $287,640. On or about May 15, 1981, the items listed in the writted agreement dated June 1, 1979, and other equipment acquired by Mr. Hunter prior to May 15, 1981, were leased by oral agreement from him to the corporation for one year for total lease payments in the amount of $290,000. In summary form, the annual lease dates and payments are: Date of Lease
Total Lease Payments
June 1, 1978 (oral)
Not in record
June 1, 1979 (written)
$256,000
May 15, 1980 (oral)
$287,640
May 15, 1981 (oral)
$290,000
Petitioners received total rental income under the lease of assets to the corporation for the taxable years 1979, 1980, and 1981 in the amounts of was $182,025, $287,640, and $254,400, respectively. No allocation was made between amounts paid for rent of the land, building, equipment and the provision of support personnel. From the sums received, petitioners paid compensation to four persons employed by petitioners, and provided by petitioners to the corporation as support personnel under the terms of the leases. Two of the employees were floor supervisors, *367 one was a maintenance and repair person, and one was a programmer. None of these individuals was related to petitioners. The corporation did not reimburse petitioners for any of the administrative expenses incurred in paying the compensation. The compensation, if allowed as a deduction with respect to the leased property solely by reason of section 162, exceeds 15 percent of the rental income for the section 38 property. On its returns for the taxable years before this Court, the corporation claimed no deductions for depreciation, amortization, or investment tax credit for any of the properties or equipment. Petitioners claimed investment tax credit for the leased or purchased equipment on their Federal income tax returns for the taxable years 1979, 1980, and 1981. On March 4, 1983, the Commissioner issued a statutory notice of deficiency to petitioners for the taxable years 1979, 1980, and 1981. The Commissioner determined that the investment tax credit claimed by petitioners was excessive and reduced the credit to $1,231 for the taxable year 1979, and disallowed the credit in full for the taxable years 1980 and 1981. The adjustments are as follows: Investment Tax Credit
Investment Tax Credit
Taxable Year
Claimed by Petitioners
Allowed by Commissioner
1979
$5,745
$1,231
1980
49,291
1981
6,410
*368 On July 21, 1983, the Commissioner issued a statutory notice of deficiency to petitioners for the taxable years 1977 and 1978. In such notice, the claimed carrybacks of investment tax credit from the taxable years 1979 and 1980 against the tax liability of petitioners for the taxable years 1977 and 1978 were disallowed by the Commissioner. The deficiencies determined by the Commissioner for the taxable years 1977 and 1978 represent the refunds made to petitioners pursuant to Form 1045, Application for Tentative Refund, filed by petitioners for those years. The Commissioner's determination in his statutory notices of deficiency to disallow the investment tax credit is presumptively correct, and petitioners have the burden of disproving each individual adjustment. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Section 38 allows a credit against income tax for investment in "section 38 property" which is defined under section 48(a)(1) to include generally depreciable, tangible personal property having a useful life of at least 3 years. Section 108 of the Revenue Act of 1971, Pub. L. 92-178, 85 Stat. 497, 507, imposed limitations on the availability *369 of the investment tax credit to certain noncorporate lessors by adding section 46(e)(3) to the Code. The clear intent of Congress was to deny the benefits of the investment credit to noncorporate lessors who have engaged in mere passive investment or financing risks as opposed to having assumed the risks and obligations usually associated with an active business. Carlson v. Commissioner,79 T.C. 215, 221 (1982), affd. 712 F.2d 1314 (9th Cir. 1983); H. Rept. 92-533, 1972-1 C.B. 498, 513; S. Rept. 92-437, 1972-1 C.B. 559, 583.Noncorporate lessors are, therefore, entitled to the investment tax credit only if the equipment is subject to a short-term lease, under the conditions set forth in section 46(e)(3), which provides: (3) NONCORPORATE LESSORS.--A credit shall be allowed by section 38 to a person which is not a corporation with respect to property of which such person is the lessor only if-- (A) the property subject to the lease has been manufactured or produced by the lessor, or (B) the term of the lease (taking into account options to renew) is less than 50 percent of the useful life of the property, and for *370 the period consisting of the first 12 months after the date on which the property is transferred to the lessee the sum of the deductions with respect to such property which are allowable to the lessor solely by reason of section 162 (other than rents and reimbursed amounts with respect to such property) exceeds 15 percent of the rental income produced by such property. Neither party contends that petitioners manufactured or produced the equipment leased to the corporation. The necessary prerequisites for petitioners' entitlement to the investment tax credit, as noncorporate lessors, are, therefore: (1) a lease term of less than 50 percent of the useful life of the property, and (2) section 162 expenses, with respect to the property, in excess of 15 percent of the rental income from the property for the first 12 months after the property is transferred to the lessee. For petitioners to prevail, they must first show that the terms of the leases were less than 50 percent of the useful life of the section 38 property. The only written, executed lease was for a term of one year, without a provision for renewal or option to renew. The oral leases were also for one year terms, *371 without provisions for renewal or options to renew. Nominally, the leases in this case were neither for an indefinite term, nor were they open-ended in term. Either of these situations would result in a lease for a term of more than 50 percent of the useful life of the section 38 property, and consequent failure to qualify for the investment tax credit. Ridder v. Commissioner,76 T.C. 867 (1981); Hokanson v. Commissioner,730 F.2d 1245 (9th Cir. 1984), affg. a Memorandum Opinion of this Court. Similarly, petitioners are not in the position of arguing that the terms of section 46(e)(3)(B) are met solely because of an early termination due to cancellation or destruction of the property. Cf., Ridder v. Commissioner,supra at 872-873; Bloomberg v. Commissioner,74 T.C. 1368 (1980). Rather, these leases, viewed as independent instruments, are individually for terms of substantially less than 50 percent of the stipulated useful lives of the section 38 property. Respondent contends, however, that the leases are not to be viewed in isolation, but that the test for calculating the length of the actual lease term *372 is the "realistic contemplation" of the parties, and that the circumstances in this case indicate an established practice which either makes the leases of indefinite duration or requires that the leases be aggregated. [2] Respondent also argues that the prior, unexecuted lease indicates that the parties anticipated that the equipment would be leased for so long as it was useful. Petitioners contend that they have met the statutory requirements for allowance of the investment tax credit in that not one of the leases is for more than 50 percent of the useful life of the property leased. Petitioners assert that the fact that the long-term lease was not executed is a strong indication that the parties did not intend to enter into a long-term lease. Petitioners also contend that the leases, by their terms, were separately negotiated, for individual one-year periods, and for items that were not "the same or substantially similar" and that the leases, therefore, should not be aggregated. We are unable to agree with respondent that the unexecuted lease is determinative of the parties' intention to lease the *373 equipment at issue for a period of longer than 50 percent of its useful life. Further, we respect the fact that each lease was for a finite, rather than an indefinite term, and that the duration of each lease is for a period of less than 50 percent of the equipment's useful life. We find, however, that the durations all four leases must be aggregated to determine the duration of the equipment lease under the terms of section 1.46-4(d)(4), Income Tax Regs., which provides: (4) * * * If a noncorporate lessor enters into two or more successive leases with respect to the same or substantially similar items of section 38 property, the terms of such leases shall be aggregated and such leases shall be considered one lease for the purpose of determining whether the term of such leases is less than 50 percent of the estimated useful life of the property subject to such leases. Thus, for example, if an individual owns on airplane with an estimated useful life of 7 years and enters into three successive 3-year leases of such airplane, such leases will be considered to be one lease for a term of nine years for the purpose of determining whether term of the lease is less than 3-1/2 years *374 (50 percent of the 7-year estimated useful life). This regulation was promulgated with explicit Congressional authority pursuant to section 38(b), and is entitled to the customary deference accorded legislative regulations. Commissioner v. Portland Cement Co. of Utah,450 U.S. 156, 169 (1981). Further, this regulation is a reasonable and consistent interpretation of the statute. Thor Power Tool Co. v. Commissioner,439 U.S 522 (1979). Although the parties have stipulated to substantial amounts of newly leased or purchased equipment in each of the taxable years at issue, petitioners have failed to prove that the equipment was not the same or substantially similar from one year to the next. Rule 142(a). We find, therefore, that the leases at issue should be aggregated under the provisions of this regulation, as there are two or more successive leases dealing with the same or substantially similar property. The four leases before this Court, once aggregated under section 1.46-4(d)(4), Income Tax Regs., have an aggregated term in excess of 50 percent of the stipulated useful lives of the section 38 property at issue. Further, although the executed *375 and oral leases between the parties cover periods of only one year each, it is obvious that the realistic contemplation of the parties in this instance was that the overall length of the lease arrangement would be for an indefinite period or at least for the useful life of the property leased. Hokanson v. Commissioner,supra at 1249. A minimum duration specified in a lease is not the controlling factor in determining the length of the term of the lease for section 38 purposes. Hokanson v. Commissioner,supra at 1248 n. 2. All of the facts and circumstances surrounding the leases must be examined. Highland Hills Swimming Club, Inc. v. Wiseman,272 F.2d 176, 179 (10th Cir. 1959); Buddy Schoellkopf Products, Inc. v. Commissioner,65 T.C. 640, 656 (1975). Despite the assertion by petitioners that the leases are separate and distinct, rather than being mere continuations of an ongoing arrangement, the variances in terms of the leases from year to year were so slight that the parties failed to even execute new leases, relying on the written lease for all terms but the actual equipment to be leased, and *376 the total amount of the payments for the particular year. Petitioners have failed to show that the leases were not interrelated and that they were independently negotiated. A final factor that supports our finding that petitioners are not entitled to the investment tax credit for the section 38 property in this case is the close relationship of the activities of the lessor and lessee.The regular purchases and leases of equipment by Mr. Hunter over a period of at least four taxable years, followed by the immediate leasing of these items to petitioners' wholly owned corporation, bespeaks a substantial, coordinated and long-term undertaking by both parties. Hokanson v. Commissioner,supra at 1249. A practical construction of the facts and circumstances of the leasing transactions is that the parties anticipated an ongoing leasing arrangement for an indefinite period in excess of 50 percent of the useful lives of the section 38 property. See G.W. Van Keppel Co. v. Commissioner,295 F.2d 767 (8th Cir. 1961), affg. a Memorandum Opinion of this Court; Highland Hills Swimming Club, Inc. v. Wiseman,supra.
As the first *377 prong of the test for the use of the investment tax credit by a noncorporate lessor under section 46(e)(3) has not been met, it is unnecessary to resolve whether the expense of compensating the individuals hired by petitioners as support personnel constitutes an expense with respect to the equipment, deductible under section 162, within the purview of section 46(e)(3)(B). Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the relevant years, and all Rule references are to the Rules of Practice and Procedure of this Court.↩
2. Peterson v. Commissioner,T.C. Memo. 1982-442↩.