THE STANDARD TUBE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5406. Promulgated May 3, 1946.

*Meredith M. Daubin, Esq.*, for the petitioner.
*A. J. Friedman, Esq.*, for the respondent.

VAN FOSSAN, *Judge*: The major question at issue is whether certain expenditures made by the petitioner for foundations and installation costs of machinery should be amortized over the term of the lease under which it was then occupying and using buildings and land for its plant purposes, or should be depreciated over the useful life of the machines.

The respondent's position is that the period of amortization is confined strictly to the term of the original leases expiring on December 31, 1938, and that therefore the entire amount of the expenditures in controversy should have been amortized by that date, regardless of the petitioner's conception of its rights at the time and its corresponding book entries. Hence, he concludes, there remain no unamortized or undepreciated costs which can be included in the petitioner's carry-over of loss to its income tax return for 1941. The petitioner contends that the proper basis for depreciation is the useful life of the machinery to which the expenditures related.

On the assumption that the sums expended for foundation and installation operations resulted in permanent improvements, the respondent's view might be correct if the record contained only the amounts expended by the petitioner in 1936 and 1937 and the "original" leases expired on December 31, 1938. In that case a definite tenancy would have been established and the improvements to the real estate made by the tenant would have been amortizable over the term of the lease.

However, the facts before us do not support the respondent's theory. The petitioner first became a tenant of the Ford Motor Co. in 1928. No leases prior to those directly involved in the present issue have been presented. The petitioner has continued to occupy the same land and buildings, with minor modifications of rental and floor space, until the present time. Incorporated in the September 10, 1936, lease were detailed provisions governing the covenants between the lessor and lessee. Supplemental and renewal lease agreements specifically recognized such primary provisions.

The paragraph in the September 10, 1936, agreement relating to a "holdover" by the lessee clearly contemplated a renewal "by an instrument in writing" but created a tenancy from month to month if such an instrument should not have been executed. The renewal agreement for the year 1939, executed on January 11, 1939, shows that it was after the expiration date of the original lease but well within the period specified in the paragraph.

The seamless tube mill and auxiliary equipment were sold on January 6, 1939, over five months after the expiration of the "original" lease and during the period of its renewal or extension. The date of the sale is significant in that it confirmed the fact that both the lessor and the lessee intended to continue the tenancy indefinitely—certainly

beyond December 31, 1938. It is not reasonable to assume that the expenditure of well over $100,000 would have been made upon the basis of a depreciation or amortization period of only twenty-seven months.

The picture thus portrayed makes the situation subject to the rule that where the tenancy of the lessee is for an indefinite period the allowance for exhaustion of the cost of improvements should be based upon the life of the improvements. *Rankin* v. *Commissioner*, 60 Fed. (2d) 76, affirming 17 B. T. A. 1301; *Sentinel Publishing Co.*, 2 B. T. A. 1211; cf. *Bowman Co.* v. *Commissioner*, 32 Fed. (2d) 404, affirming 7 B. T. A. 399; *Thatcher Medicine Co.*, 3 B. T. A. 154; *Wm. Greilich & Sons, Inc.*, 3 B. T. A. 1333; *Elmira Arms Co.*, 7 B. T. A. 703.

In *Bowman Co.* v. *Commissioner*, *supra*, the court stated:

> * * * We are of opinion that the period of the lease is not controlling where it is shown that the tenancy extended for a period substantially beyond the taxable year in which the adjustment for the improvements is claimed. In the present case the tenancy was still continuing at the time the stipulation was made in 1927, and, for ought that appears in the record, it is still in existence. It may well be that, if the tenancy had terminated prior to or at the end of the taxable year, a different case would be presented; but the taxing authorities are not confined to any fixed or rigid rule in applying the statute, since each case must depend largely upon its own facts. * * *

The facts in the case at bar show that during the period of expenditure the petitioner was reasonably certain that its lease would be renewed, but that no definite term thereof was fixed or indicated. Therefore, the costs of such foundation and installation expenditures are depreciable over their useful life (see Regulations 111, sec. 29.23 (a)–10, governing unexercised renewal options—a situation somewhat similar to that appearing here).

The question now arises, Were the costs of building the foundations and installing the machines in both the seamless tube mill and other operations of the petitioner, a part of the costs of such machines? The answer is obvious. Bulletin "F" (Revised January 1942) of the Treasury Department states on page 2:

> * * * The cost of installation, as well as the freight charges thereon, are capital expenditures to be added to the cost of the property recoverable through depreciation deductions.

See *Rankin* v. *Commissioner*, *supra*.

The petitioner maintains that the foundations for the machines were improperly classified by the respondent as "building improvements." We agree. The stipulation specifically states:

> The seamless tube mill foundation costs consisted of amounts expended for various types of material and labor required to construct specially-designed foundations for the seamless tube mill and auxiliary equipment. These foundations had no useful value to the petitioner in connection with its business and operations other than in connection with the operation of the seamless tube mill and auxiliary equipment.

(See also C. B. I–1, p. 196, IT 1309.)

The facts that the foundations were specially designed and adapted to the seamless tube mill (which was dismantled and sold in 1939) and to the machinery and equipment other than the seamless tube mill and that all such expenditures were capitalized on the petitioner's books demonstrate that they were essentially integral parts of the machines and were so treated and considered. It is logical and proper, therefore, to allow depreciation on the same basis and at the same rate as those applicable to the machines for which the foundations were built and to which the installation costs pertained.

The cases cited and relied upon by the respondent, *379 Madison Avenue, Inc.* v. *Commissioner*, 60 Fed. (2d) 68, and *Fackler* v. *Commissioner*, 133 Fed. (2d) 509, were decided on facts quite dissimilar to those stipulated here and consequently are not in point.

Recomputation of the petitioner's tax liability will be made pursuant to the figures stipulated.

*Decision will be entered under Rule 50.*