JAMES T. SMYTHE and JUDITH M. SMYTHE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smythe v. Commissioner
Docket No. 9805-83.
United States Tax Court
T.C. Memo 1985-624; 1985 Tax Ct. Memo LEXIS 5; 51 T.C.M. (CCH) 158; T.C.M. (RIA) 85624; December 26, 1985. James T. Smythe, pro se. Nancy W. Hale, for the respondent. SCOTT
MEMORANDUM OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax for the calendar years 1978 and 1979 in the amounts of $6,803.26 and $3,196.74, respectively. The issue for decision is whether petitioners are entitled to an investment tax credit under section 46(e)(3)(B)[1] with respect to equipment purchased from and then leased to a corporation the stock of which was owned entirely by petitioners and their four dependent children. All of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, who resided in Murfreesboro, Tennessee, at the time of the filing of their petition in this case, filed joint Federal income tax returns for the *7 taxable years 1978 and 1979 with the Director, Internal Revenue Service Center, Memphis, Tennessee. Warren Paint and Color Co. (Warren Paint) was organized as a corporation and began operations on June 1, 1978, and reported its income for fiscal years ending May 31. At its formation, Warren Paint took over a plant previously operated by United States Gypsum Co. (U.S. Gypsum) and entered into a contract to purchase machinery and equipment from U.S. Gypsum. All of the stock of Warren Paint was owned by petitioners and their four dependent children.Under its contract with U.S. Gypsum, Warren Paint agreed to purchase $345,000 worth of equipment from U.S. Gypsum. James T. Smythe (petitioner) agreed to guarantee and endorse the company's promissory note in the face amount of $345,000 payable to U.S. Gypsum. In consideration of petitioner's agreeing to guarantee this note, Warren Paint agreed to assign, transfer and convey to petitioner the company's right to purchase $100,000 worth of the equipment from U.S. Gypsum with petitioner to choose the equipment he was to purchase. Petitioner agreed to be individually and solely responsible for the payment of $100,000 of the $345,000 promissory *8 note and that the corporation should only be responsible for $245,000 of that note. The agreement between Warren Paint and petitioner, which was entered into on May 18, 1978, further provided that the corporation agreed to lease the equipment which was acquired by petitioner on a 5-year lease with a monthly payment of $1,500, with the company to pay any and all taxes, insurance and other expenses incurred in connection with the equipment leased. The agreement further provided that the corporation should have no right to purchase the equipment at the end of the lease. The equipment selected by petitioner, totaling $100,000, consisted of such items as an agitator transfer pump, addressograph printer, fire protection system, color dispenser blender, air compressor, air conditioner, Purabond manufacturing equipment, cartridge packing machine, paint boxing machine, filling machine, filling machine pump, an Elgin twin-line filler, calculator, typewriter, holding tank piping and wiring, office partitions and various plant paint equipment. On June 7, 1978, petitioner, as the lessor, entered into a lease agreement with Warren Paint, as lessee, with respect to the equipment which petitioner *9 purchased. This lease agreement recited that the property leased consisted of certain personal property to be utilized in the paint and adhesive manufacturing business of the corporation. It provided that the term of the lease should be for a period of 5 years, commencing on June 1, 1978, and ending on May 31, 1983, and the monthly rental payment should be $1,500. The lease further provided that the lessee would use and occupy the property in a careful and proper manner and would indemnify the lessor from harm resulting from loss, damage and liability occasioned by, growing out of, or arising or resulting from any default on the part of the lessee or any tortuous or negligent act on the part of the lessee, its agents or employees, and that the lessee would provide insurance for the property and maintain the equipment in good working condition and return the same to the lessor at the termination of the lease in as good condition as received at the commencement of the lease, reasonable wear and tear excepted. Petitioner had a sole proprietorship which operated under the name Smythe Supply Co. that provided management services during the year 1979. In addition, petitioner and Joseph *10 M. Swanson were partners in a partnership, General Business Co., in Murfreesboro, Tennessee. As shown by its partnership return of income, the business of the partnership was the rental of warehouse property in Murfreesboro, Tennessee. In the year 1978 the partnership reported income in the amount of $254,084.35 from the rental of this property and in addition reported $588.74 from an oil well. On its partnership return of income for the year 1979, the partnership's only income as reported was rents from the warehouse property in the amount of $279,745.33. During the years 1978 and 1979, petitioner was an employee of McCann Steel Co. in Nashville, Tennessee, and reported salary income from his employment on his return for each of these years. With his 1979 return, petitioner filed a Schedule C, Profit or (Loss) From Business or Profession, for his sole proprietorship, Smythe Supply Co. He reported receipts and cost of goods sold and expenses of operation on this Schedule C, showing a net profit from this sole proprietorship of $122.44. On the partnership returns of income filed by General Business Co., gross receipts were reported and various deductions claimed for expenses *11 listed on those returns. The only expenses claimed by petitioner in connection with the rental of manufacturing equipment to Warren Paint in the years 1978 and 1979 were for depreciation and interest. For the year 1978, petitioner deducted depreciation on the equipment rented to Warren Paint of $8,750 and interest of $4,192.19. For the year 1979, petitioner claimed a depreciation deduction on this equipment of $13,687.50 and interest of $7,958.62. The useful life of the equipment used on petitioner's returns for computing depreciation deductions was 10 years. At the expiration of the 5-year term of the lease of the equipment owned by petitioner to Warren Paint on May 31, 1983, that company continued to use the equipment under an oral month-to-month lease and at the time of the trial of this case in December 1984 was still using the equipment under a month-to-month oral lease in its business operations. On their Federal income tax return for 1978, petitioners claimed a total investment credit of $10,000. They utilized $6,803.26 of this amount in 1978 and carried over investment credit from the equipment leased to Warren Paint to 1979 in the amount of $3,196.74. Respondent *12 in the notice of deficiency issued to petitioners disallowed the claimed investment tax credit and claimed investment tax credit carryover with the following explanation: It is determined that the equipment leased to Warren Paint Company does not qualify for the investment tax credit under section 38 of the Internal Revenue Code because it has not been established that you have met the qualifying requirements of section 46 of the Internal Revenue Code. Accordingly, investment tax credit in the amount of $6,803.26 claimed on your 1978 income tax return and the amount of $3,196.74 claimed as a carryover to your 1979 income tax return is not allowed. An investment tax credit is allowed under section 38 for certain depreciable property in an amount to be determined under section 46. Section 46(e)(3), relating to noncorporate lessors, provides insofar as here pertinent that a credit shall be allowed to a person which is not a corporation with respect to property of which that person is a lessor only if the term of the lease, taking into account *13 options to renew, is less than 50 percent of the useful life of the property and for the period consisting of the first 12 months after the date on Which the property is transferred to the lessee the sum of the deductions with respect to such property allowable to the lessor solely by reason of section 162 exceeds 15 percent of the rental income of the property. [2]
In this case respondent *14 does not question that the equipment leased by petitioner to Warren Paint was used "section 38 property." Respondent's position is that petitioner was a noncorporate lessor and that the term of the lease of the property by petitioner to Warren Paint was not less than 50 percent of the useful life of the property, and also that for the first 12 months after the date of the lease of the property to Warren Paint the deductions with respect to the property allowable solely by reason of section 162 did not exceed 15 percent of the rental income produced by the property. Respondent takes the position that since the property was shown on petitioner's returns to have a useful life of 10 years and the lease to Warren Paint was for a period of 5 years, the lease was not for a term of less than 50 percent of the useful life of the property. Petitioner answers this by stating that the 5 years covered by the lease contained 1,826 days and the 10-year period of the useful life of the equipment contained 3,653 days. It is petitioner's contention that because of the fact that there was one day more in the 10 years than twice the number of days in the 5 years, the lease was for less than one-half *15 the useful life of the property. Respondent argues that since the lease was in terms of years and the useful life in terms of years, the periods in each instance should be determined in years and not influenced by the happenstance of some years having one day more than other years. However, in the alternative respondent contends that realistically and substantively the term of the lease was not limited to the stated 5-year term but that the lease was of indefinite duration and therefore for more than 50 percent of the 10-year useful life of the property. It is respondent's position that the facts here show that when the lease was entered into it was intended and understood that Warren Paint would use the leased property after the expiration of the stated term of the lease and for as long a period of time as the equipment was useful in its business. Petitioner effectively does not dispute this contention of respondent but rather argues that there was no agreement at the time the lease was entered into with respect to whether it would continue after the expiration of the 5-year term. This Court and other courts have considered on a number of occasions whether a lease is of a stated *16 or indefinite duration and in all of these cases held that the facts and circumstances of the transaction are controlling. G. W. Van Keppel Co. v. Commissioner,295 F.2d 767 (8th Cir. 1961), affg. a Memorandum Opinion of this Court; Buddy Schoellkopf Products, Inc. v. Commissioner,65 T.C. 640, 657 (1975); Standard Tube Co. v. Commissioner,6 T.C. 950, 955 (1946). Where there is a reasonable certainty that the lessee will continue leasing the property after the expiration of the stated term of the lease, the lease is generally considered indefinite. For purposes of section 46(e)(3)(B), it is the realistic contemplation of the parties which is controlling. Hokanson v. Commissioner,730 F.2d 1245, 1248 (9th Cir. 1984), affg. a Memorandum Opinion of this Court. The facts and circumstances in this case clearly indicate that the realistic term of the lease of the equipment was for as long as it was useful in the business of Warren Paint and not the stated term of the lease. The record shows that petitioner purchased the *17 equipment specifically for Warren Paint's needs. All of the equipment was rented to Warren Paint, and petitioner made no effort to find any other leasing arrangements. Actually, the lease did continue after the stated termination date. Petitioner and his family owned all of the stock of Warren Paint and there existed mutual reasons for continuing the lease for the useful life of the property. Furthermore, this record indicates that the probability is that petitioner purchased the $100,000 of equipment in his individual capacity because Warren Paint could not utilize the entire investment credit which would result from the $345,000 of equipment it had contracted to buy from U.S. Gypsum, and therefore, by petitioner as an individual purchasing $100,000 of this equipment and leasing it back to Warren Paint, these would be a substantial tax savings. All these factors indicate that, realistically, the lease of the equipment to Warren Paint was for the actual useful life of the property to Warren Paint and therefore was for a period of time in excess of 50 percent of the useful life of the equipment. From our conclusion that the term of the lease was in excess of 50 percent of the *18 useful life of the equipment, it follows that petitioner is not entitled to the claimed investment tax credit. Ridder v. Commissioner,76 T.C. 867 (1981). However, it is clear from this record that petitioner has totally failed to establish that the sum of the deductions allowable pursuant to section 162 for the first 12 months of the lease exceeded 15 percent of the rental income produced by the equipment. The rental income was $1,500 a month or $18,000 for a 12-month period. Fifteen percent of this amount is $2,700. On his tax returns for the years 1978 and 1979, the only deductions claimed by petitioner with respect to the equipment leased to Warren Paint were depreciation and interest. Neither depreciation nor interest are deductions allowable solely pursuant to section 162. Depreciation is allowable by reason of section 167 and interest by reason of section 163. [3] Although petitioner took no deductions other than depreciation and interest in connection with the lease of the equipment, on brief he argues that part of the deductions claimed in 1979 for his sole proprietorship and part of the deductions claimed in 1978 and 1979 for the partnership in which *19 he owned a partial interest should be considered as applicable to the equipment lease. There is no evidence whatsoever in the record to substantiate petitioner's contention with respect to allocating part of the deductions claimed in connection with other businesses to his rental of equipment. Furthermore, *20 if in fact any of the claimed deductions were applicable to petitioner's equipment leasing business, there is no showing in this record of the pro rata amount of such deductions. The fact that all expenses of insurance, maintenance and similar items were borne by the lessee indicates that petitioner correctly reported only depreciation and interest deductions with respect to the equipment and in fact did not have any other expenses connected therewith. In any event, the burden is on petitioner to establish his entitlement to the claimed investment credit and he has totally failed to establish that deductions allowable solely by reason of section 162 in the first 12 months after the commencement of the lease exceed 15 percent of the rental received from the property. The evidence in the record indicates that in fact such deductions, if any, did not exceed 15 percent of the rental from the equipment. We therefore conclude that petitioner has failed to establish that he qualifies for the investment tax credit. As a noncorporate lessor, petitioner is subject to the requirement of section 46(e)(3)(B) and he has failed to show that he meets either the requirement that the lease be for *21 a period of less than 50 percent of the useful life of the property or the requirement that the section 162 deductions for the 12 months after the date of the lease exceed 15 percent of the rental received from the property. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue.↩
2. Sec. 46(e)(3)(B) provides in part of follows: (e) Limitations with Respect to Certain Persons.-- * * * (3) Noncorporate lessors.--A credit shall be allowed by section 38 to a person which is not a corporation with respect to property of which such person is the lessor only if-- * * * (B) the term of the lease (taking into account options to renew) is less than 50 percent of the useful life of the property, and for the period consisting of the first 12 months after the date on which the property is transferred to the lessee the sum of the deductions with respect to such property which are allowable to the lessor solely by reasons of section 162↩ (other than rents and reimbursed amounts with respect to such property) exceeds 15 percent of the rental income produced by such property.
3. Sec. 1.46-4(d)(3)(ii), Income Tax Regs., specifically provides that depreciation and interest deductions are not to be considered in determining whether deductions under sec. 162 equal 15 percent of the rental value of the property. This section of the regulation provides in part: (ii) Only those deductions allowable solely by reason of section 162↩ are taken into account in applying the more-than-15-percent test. Hence, depreciation allowable by reason of section 167 (including amortization allowable in lieu of depreciation); interest allowable by reason of section 163; taxes allowable by reason of section 164; and depletion allowable by reason of section 611 are examples of deductions which are not taken into account in applying the test. * * *